UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>                Plaintiff,<br>v.<br><br>JOHN DOE, subscriber assigned IP address 24.44.241.209,<br><br>                Defendant. | Civil Action No.<br>3: 17 - CV - 1680  (CSH)<br><br><br>NOVEMBER 1, 2017 |

**RULING ON PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO RULE 26(f) CONFERENCE**

**HAIGHT, Senior District Judge:**

## I.  INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3") brings this copyright infringement action as the owner of original adult motion pictures that are featured on its subscription-based websites. *See* Doc. 9-2 (Declaration of Greg Lansky), ¶ 3.[1] Through its hired investigator, IPP International U.G. ("IPP"), Strike 3 has learned that Defendant Doe's Internet Protocol ("IP") address (24.44.241.209) was used to illegally distribute several of Strike 3's movies.[2] Doc. 9-1, at 4, Doc. 9-3 (Fieser Decl.),

---

[1] Greg Lansky is a member of General Media Systems, LLC ("GMS"), the parent company that owns Strike 3. Doc. 9-2, ¶ 1.  He testified in his sworn declaration that "Strike 3 owns the intellectual property to the Blacked, Tushy, and Vixen adult brands, including the copyrights to each of the movies distributed through Blacked, Tushy and Vixen and the trademarks to each of the brand names and logos." *Id.*, ¶ 3.

[2] Strike 3's independent forensic expert reviewed the evidence captured by IPP and confirms that Defendant Doe's IP address was used to distribute Strike 3's Movie "Loosen Up" on 8/29/2017 at 15:45:22 (Universal Time of the United States Internet Service Providers), the exact date and time reported by IPP. Doc. 9-1, at 4. *See also* Doc. 9-3 ("Declaration of Tobias Fieser," IPP employee

1

¶ 7.³   IPP employs forensic software to identity IP addresses that infringers use to distribute copyrighted works within the BitTorrent File Distribution Network. Doc. 9-3 (Fieser Decl. ), ¶ 5.

According to Plaintiff, IPP's investigations have revealed that Defendant used the BitTorrent protocol to illegally distribute its movie "Loosen Up" on August 29, 2017.⁴ *Id.*, ¶ 7. Moreover, IPP has determined that Defendant is "a persistent infringer of Strike 3's works," having used the same IP address to infringe on "at least 21 movies belonging to Strike 3." *Id.*, ¶ 11. IPP has concluded that "[t]he infringement appears consistent and on-going." *Id.*

Strike 3 asserts that the only means it has to identify this persistent infringer is through his assigned IP address. Strike 3 has thus filed the pending motion for leave to serve a third party subpoena on Optimum Online, Defendant's Internet Service Provider ("ISP"), pursuant to Rule 45, Fed. R. Civ. P. *See* Doc. 9, at 1. By obtaining the name and address of the Defendant, Plaintiff will be able to properly identify and serve him, and thereby prosecute Plaintiff's copyright infringement claim.⁵

---

in litigation support department), ¶¶ 7, 10; Doc. 9-4 (Declaration of Jeff Fischbach, President of SecondWave Information Systems), ¶¶ 9, 11.

³ The Court cites the pages of the pleadings on the case docket according to the pagination of the Doc. No. (the number appearing in the upper right hand corner of each page of a filed document).

⁴ According to Plaintiff, BitTorrent is "a system designed to quickly distribute large files over the Internet." Doc. 1, ¶ 17. "Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users." *Id.* Then, "[o]nce a user downloads all of the pieces of that movie from the other BitTorrent users, the movie is automatically reassembled into its original form, ready for playing." *Id.,* ¶ 18.

⁵ The Court notes that Plaintiff has asserted that both personal jurisdiction over Defendant and venue are proper within the District of Connecticut because "Plaintiff used IP address geolocation technology by Maxmind, Inc. ('Maxmind'), an industry leading provider of IP address

## II. DISCUSSION

In general, parties "may not initiate discovery prior to satisfying the meet and confer requirement of Fed. R. Civ. P. 26(f)." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). Specifically, under Rule 26(d)(1), Fed. R. Civ. P., "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except in limited proceedings delineated in Rule 26(a)(1)(B), or "when authorized by these rules, by stipulation, or by court order." "[C]ourts may in some instances order earlier discovery." *Digital Sin*, 279 F.R.D. at 241 (citing Fed. R. Civ. P. 26(d)). *See, e.g.*, *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, No. 1:16-CV-02462 (AJN), 2016 WL 2894919, at *2 (S.D.N.Y. May 16, 2016) ("[A] party may engage in discovery before such a [26(f)] conference pursuant to a court order.") (citing Fed. R. Civ. P. 26(d)(1)).

When considering whether to grant a motion for expedited discovery prior to a Rule 26(f) conference, courts apply a "flexible standard of reasonableness and good cause." *Malibu Media, LLC*, 2016 WL 2894919, at *2 (gathering cases). *See also Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 152-53 (D. Conn. 2008) (applying "good cause" standard to request for expedited discovery) (citation omitted). *See generally* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts

---

intelligence and online fraud detection tools, to determine that Defendant's IP address traced to a physical address in this District." Doc. 1, ¶¶ 8-10. According to Plaintiff, more than five thousand companies, "along with United States federal and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors, perform analytics, enforce digital rights, and efficiently route Internet traffic." *Id.*, ¶ 9. In addition, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (jurisdiction over copyright actions). *Id.*, ¶ 7.

presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

In the Second Circuit, in evaluating subpoenas seeking identifying information from ISPs regarding subscribers who are parties to copyright infringement litigation, courts have examined the following factors:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't , Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)).  If "[a]pplication of these 'principal factors' confirms that the Plaintiff is entitled" to the requested subpoena, the motion for early discovery will be granted for "good cause." *Malibu Media, LLC*, 2016 WL 2894919, at *2.

Examining the principal factors in detail, the plaintiff must first state a prima facie claim for copyright infringement. *See, e.g., Sony Music Entm't Inc.*, 326 F. Supp. 2d at 565.  Specifically, the plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  *See also Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) (same).

Strike 3 has alleged that it is the owner of the work at issue, the "Loosen Up" movie, which is registered with the United States Copyright Office as registration number PA0002052848.  Doc. 1 ("Complaint"), ¶¶ 30-31; Doc. 9-1, at 9.  *See also* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the

certificate.").

In addition, Strike 3 has made a plausible showing that wrongful "copying" of that work has occurred. Plaintiff has alleged that investigation by IPP has revealed and recorded Defendant infringing the "Loosen Up" movie (on August 29, 2017), as well as twenty-one of Plaintiff's others movies, which are all registered with the United States Copyright Office. Doc. 1, ¶¶ 23-27, 32-34. Defendant allegedly downloaded Plaintiff's movies over the BitTorrent network and distributed the files for said movies to the BitTorrent swarm. Doc. 1, ¶¶ 25-27, 39.

The owner of a copyright has exclusive rights to reproduce that copyrighted work and to distribute copies to the public by sale, transfer of ownership, rent, lease, or lending. 17 U.S.C. §§ 106(1)-(2). Moreover, a plaintiff is entitled to seek statutory damages and attorney's fees under the United States Copyright Act if its copyrighted work was registered within three months of the first date of publication. 17 U.S.C. §§ 411 (c)(2), 501.

A plaintiff makes "a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement." *Malibu Media, LLC v. Doe*, No. 14-CV-4808 (JS)(SIL), 2016 WL 4574677, at \*6 (E.D.N.Y. Sept. 1, 2016) (quoting *Malibu Media, LLC v. John Does 1-11*, No. 12-CV-3810 (ER), 2013 WL 3732839, at \*6 (S.D.N.Y. July 16, 2013)). *See also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 565-66 ("[T]he use of P2P [peer-to-peer] systems to download and distribute copyrighted music has been held to constitute copyright infringement.") (collecting cases); *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) ("Indeed, every court to have addressed this issue has found a sufficiently alleged copyright

infringement claim based on BitTorrent technology, even when the defendant was merely identified with an IP address."). Under these circumstances, Plaintiff has stated a prima facie case for actionable harm due to copyright infringement.

Second, in order to show "good cause" for early discovery, the plaintiff must narrowly tailor and specify the information sought by the discovery request.  The information requested in the subpoena must be limited, seeking "concrete and narrow information: the name and address of the subscriber associated with Doe [Defendant's] IP address . . . . " *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012). Courts have labeled the subscriber's identity and address as "highly specific," *Malibu Media*, 2016 WL 4574677, at *6, recognizing that "Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims," *UN4 Prods., Inc. v. Doe-173.68.177.95*, No. 17-CV-3278 (PKC) (SMG), 2017 WL 2589328, at *3 (E.D.N.Y. June 14, 2017) (citation and internal quotation marks omitted).  *See also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566 ("Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process."); *Malibu Media, LLC*, 2013 WL 3732839, at *5 n.1 ("Discovery requests must be 'sufficiently specific' to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court.'") (quoting *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566); *Arista Records LLC*, 589 F. Supp. 2d at 153 (granting "expedited discovery limited to the 'name, address, telephone number, e-mail address, and Media Access Control addresses for each defendant'") (quoting *London–Sire v. Doe*, 542 F. Supp. 2d 153, 178 (D. Mass. 2008)).

In the case at bar, the subpoena requested seeks "the true name and address of the Defendant to whom the ISP assigned an IP address as set forth in the Complaint." Doc. 9-5, ¶ 2.  Because the subpoena is sufficiently specific, the second principal factor weighs in favor of the Court granting Plaintiff's motion for leave to serve the subpoena.

Third, there must be no "alternative means to obtain the subpoenaed information.*" Arista Records*, 604 F.3d at 119 (quoting *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 564-65).  In the case at bar, the only information Plaintiff has regarding Defendant Doe is his IP address.  Doc. 9, at 10. According to Jeff M. Fischbach, founder and President of SecondWave Information Systems, who was hired as Plaintiff's litigation consultant and "Forensic Examiner," "Defendant's ISP, Optimum Online, is the only entity that can correlate the IP address to its subscriber and identify Defendant as the person assigned the IP address 24.44.241.209 during the time of the alleged infringement." Doc. 9-4 (Fischbach Decl.), ¶ 12.    The ISPs who are responsible for assigning IP addresses "know who an address is assigned to and how to get in contact with them." Doc. 9, at 10  (citing, *inter alia*, Beginner's Guide to Internet Protocol (IP) Addresses, https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf).  Otherwise, the owner of an IP address is anonymous.

As Plaintiff asserts, "ISPs' records are the only available evidence that allows us to investigate who committed crimes [or misdeeds] on the Internet." *Id.,* at 10 (quoting Statement of Jason Weinstein, Deputy Assistant Attorney General, Criminal Division, Before Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security, U.S. House of Representatives, January 25, 2011,  at  p. 2). [6]  Such addresses "may be the only way to learn . . . that

---

[6] *See* http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11/ /01-25-11-crm-weinsteintestimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf,.

7

a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense." *Id.*, at 11 (quoting Weinstein Statement, at p. 2).  Because there is no public registry to provide the names of subscribers and their corresponding IP addresses, there is "no alternate means by which Plaintiff can identify [the Defendant] absent the present subpoena." *Id.*  *See also Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171-72 (S.D.N.Y. 2012) (Because the plaintiff "cannot identify [Defendant Doe] without a court-ordered subpoena, . . . there is good cause to allow for early discovery.").  In sum, Plaintiff has established that it lacks alternative means to obtain the subpoenaed information, namely, Defendant's identity and address.

       Fourth, the plaintiff must show that the subpoenaed information is necessary to advance the claim at issue.  As stated *supra*, here, Strike 3 cannot learn the subscriber's identity without the subpoenaed information, so cannot serve process on Defendant.  *See, e.g., Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566.  *See also Arista Records LLC*, 589 F. Supp. 2d at 153 ("Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery.").  As one district court concluded in this Circuit,  "[w]ithout learning the Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim."  *Malibu Media, LLC v. Doe*, No. 15-CV-3504 (JFB) (SIL), 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016) (citation omitted).

       Finally, with respect to the fifth prong, the Court weighs the Plaintiff's interest in obtaining the information against that of Defendant's right to privacy. The question that arises is whether Defendant has an expectation of privacy in his IP address as he infringes copyrighted material.

       The Second Circuit recently acknowledged that  "[t]he Supreme Court has long held that a

'person has no legitimate expectation of privacy in information he voluntarily turns over to third parties,' including phone numbers dialed in making a telephone call and captured by a pen register." *United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017) (quoting *Smith v. Maryland*, 442 U.S. 735 (1979)). "The recording of IP address information and similar routing data, which reveal the existence of connections between communications devices without disclosing the content of the communications, are precisely analogous to the capture of telephone numbers at issue in *Smith*." *Ulbricht*, 858 F.3d at 97. The Second Circuit then "join[ed] the other circuits . . . [to] hold that collecting IP address information devoid of content is 'constitutionally indistinguishable from the use of a pen register.'" *Id.* (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), *cert. denied*, 555 U.S. 908 (2008)). Specifically, there is no expectation of privacy in "subscriber information provided to an internet provider," such as an IP address.[7] *Id.* (quoting *United States v.*

---

[7] In copyright infringement cases, defendants have argued unsuccessfully that the revelation of their subscriber information, *i.e.*, their IP address, violates their right to privacy under the First Amendment or the Fourth Amendment. For example, they have argued that the First Amendment protects anonymous speech, citing such cases as *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999). *See Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004); U.S. Const. amend. I (protecting one's anonymous speech). In other cases, they have asserted that the Fourth Amendment protects their personal information in their IP address from unreasonable seizure. *See United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017); U.S. Const. amend. IV (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). These privacy arguments have failed. The First Amendment does not protect copyright infringement. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-56 (1985). "Parties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 563 (citing *In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir.1990)). Moreover, the Fourth Amendment does not protect infringers who have voluntarily provided "their IP addresses to Internet service providers for the specific purpose of directing the routing of information." *Ulbricht*, 858 F.3d at 96 (citing *Christie*, 624 F.3d at 574).

*Christie*, 624 F.3d 558, 573 (3d Cir. 2010)).  Such information has been "voluntarily conveyed to third parties." *Christie*, 624 F.3d at 573.

    In cases where parties have argued that the First Amendment protected their anonymous speech in using their IP addresses, the Second Circuit has held that copyright infringers are not entitled to shield their identities from those who seek to enforce their claims under copyright law. For example, in *Sony Music Entm't Inc. v. Does 1-40,* the court held that "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission." 326 F. Supp. 2d at 566.  Accordingly, the copyright plaintiffs were "entitled to discovery in light of the defendants' minimal expectation of privacy" in transmitting information on the internet in violation of applicable law. *See also, e.g., Arista Records, LLC*, 604 F.3d at 124 (holding defendant's expectation of privacy for sharing copyrighted [works] through an online file-sharing network [was] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement"); *Rotten Records, Inc. v. Doe*, 108 F. Supp. 3d 132, 134 (W.D.N.Y. 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest.").

    In sum, as in *Sony Music Entm't*, the Doe Defendant's First Amendment right to remain anonymous must give way to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation, where he has voluntarily shared such information with the Internet Service Provider.  Plaintiffs will be granted leave to take early discovery to determine the identity of Defendant Doe.

    In granting early discovery by subpoena, the Court recognizes that in certain BitTorrent cases involving adult content, other courts have protected the defendants' privacy with an order

establishing procedural safeguards. For example, some courts have allowed the defendant to proceed anonymously in the case. *See e.g. Malibu Media, LLC*, 2016 WL 4444799, at *2 ("[T]he Court issued a Protective Order governing the manner in which such information would be disclosed."). As set forth *infra*, in ruling on Plaintiff's motion, the Court will accept Plaintiff's request to establish procedures to protect the Doe Defendant's privacy here.

### III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Plaintiff's "Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference" [Doc. 9] and ORDERS, as follows:

1. Under relevant Second Circuit authority, Plaintiff Strike 3 established that "good cause" exists for the Court to grant Plaintiff leave to serve a third party subpoena on Optimum Online (hereinafter the "ISP") for the purpose of determining the identity of the alleged infringer, Defendant Doe. *See, e.g., Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010); *Sony Music Entm't v. Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004); *Malibu Media, LLC v. John Does 1-11*, No. 12 Civ. 3810 (ER), 2013 WL 3732839, at *6 (S.D.N.Y. 2013); *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012).

2. Plaintiff may serve the ISP with a proper Rule 45 subpoena commanding the ISP to provide Plaintiff with the true name and address of the Defendant to whom the ISP assigned an IP address of 24.44.241.209, as set forth in the Complaint.[8] *See, e.g.*, Doc. 1, ¶ 24. Plaintiff shall

---

[8] Pursuant to Rule 45, Fed. R. Civ. P., a court-issued subpoena must state the court from which it is issued, the title and civil-action number of the relevant case, and "command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises." Fed. R. Civ. P. 45(a)(1)(A)(i)-(ii). In addition, the subpoena must include the text of Rule 45(d)-(e), setting forth, *inter alia*, provisions protecting a person subject to such a subpoena and duties in responding thereto. *Id*.

attach to any such subpoena a copy of this Order.

3. Plaintiff may also serve a Rule 45 subpoena in the same manner as described in the preceding paragraph on any service provider who, in response to a subpoena, is identified as a provider of Internet services to the Defendant.

4. If the ISP or another service provider (as described in ¶ 3, *supra*) qualifies as a "cable operator," as defined by 47 U.S.C. § 522(5), it shall comply with 47 U.S.C. § 551(c)(2)(B) by sending a copy of this Order to the Defendant.[9] Section 551(c)(2)(B) states in relevant part:

> A cable operator may disclose such [personally identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

5. The ISP shall have twenty-one (21) days from the date of service of the Rule 45 subpoena upon it to serve the Defendant Doe with a copy of the subpoena and a copy of this Order. The Defendant shall then have fourteen (14) days to file any motions with this Court to contest the subpoena, as well as to request to litigate the subpoena anonymously.[10] During this fourteen-day

---

45(a)(1)(A)(iii), (d)-(e).

[9] 47 U.S.C. § 522(5) defines the term "cable operator" as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system."

[10] In considering whether to make a motion to quash the subpoena or proceed anonymously, Defendant is reminded that the Court has already analyzed the requisite principal factors to determine that such a subpoena should be allowed under *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010). Also, in particular, with respect to privacy of one's identity, a "Doe['s] expectation of privacy for sharing copyrighted [works] through an online file-sharing network [is] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement." *Arista Records, LLC,* 604 F.3d at 124. "[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Id.* at 118. *See also* n. 7 (herein), *supra*.

period, if Defendant contests the subpoena, it shall so notify the ISP, which shall then not turn over any information to the Plaintiff. After resolution of any motion relating to the subpoena, the Court will instruct the ISP when it may, if ever, turn the requested discovery over to the Plaintiff.

6. Alternatively, if the fourteen-day period referenced in the preceding paragraph elapses without Defendant contesting the subpoena, the ISP shall have seven (7) days thereafter to produce to Plaintiff the information which is responsive to the subpoena.

7. Plaintiff may only use the information disclosed by an ISP (the true name and address of the Defendant), in response to service of the Rule 45 subpoena, for the purpose of protecting and enforcing Plaintiff's rights under its copyright, as set forth in its Complaint.

The foregoing is SO ORDERED.

Signed: New Haven, Connecticut
November 1, 2017

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge